Good morning, may it please the court. My name is Mario Costa Jr. and I'm the attorney representing the petitioners in this case. With the court's permission, I'd like to reserve two minutes of my time for rebuttal. All right. Please keep in mind that the time shown is the total time you have. I understand, Your Honor. That's why I'm reserving the two. Okay. Your Honors, in this case, I believe that the BIA made two critical mistakes when it denied the motion to reopen. The first mistake was in its conclusion that prejudice was not established in this case. Cases such as Ray v. Gonzalez, which is probably the most important case and the case that I think controls the most here, has held that when an alien is deprived of the appellate process entirely, there is, in fact, a presumption of prejudice. Now, I understand that there is a distinction between being deprived of a Ninth Circuit appeal where the court never considers the appeal and the facts of this case where the BIA actually ruled on the merits of the appeal. But just like in Ray, in Ray, an appeal was never filed. Counsel, in Ray, was that an asylum case? It was an asylum case, Your Honor. So it was denied by the immigration judge. Okay. But you don't even have an asylum case, a claim here. We've got a hardship claim. Correct, Your Honor. But that is not foreclosed. And are we foreclosed from, if we have a presumption of prejudice, are we foreclosed from looking at the record to see whether the presumption is valid here at all? Not at all, Your Honor. And I'm glad you're asking that. I think if the court was to look at the case of Morales-Apollinar, which we provided in a 28J letter that we recently filed, in that case, it actually, interestingly enough, dealt with the same law office, Mr. Valinati's law office. And in that case, this Court engaged in an analysis. And in that case, that involved a cancellation of removal application. And in that case, the Court concluded that a failure to call witnesses to testify, a failure to submit evidence to the court. What would the proof show? So what's the prejudice here? Well, I think that the prejudice, first of all, assuming that the court doesn't find there's a presumption of prejudice, which would obviously be our first position, the alternate position would be, I think that if you look at the transcript from the Immigration Court proceedings with Judge Reschenko, it's clear that Mr. Bush, who was an attorney that was working with Mr. Valinati at the time, was not prepared for the case. And on multiple occasions ---- Tell me what the facts are for your clients that are going to work once you get back to the BIA. Very well. Because I think the facts, we have a lot of facts that were developed, and I haven't heard anything in addition to the facts that were developed before the IJ. So I don't know what it is that Mr. Bush missed. But he may not have been well prepared. But what are the merits of your client's claims? Well, Your Honor, in this case, the Respondents, or the Petitioners, I should say, had five qualifying relatives. There were the two legal resident parents, and Mr. Bush made a decision not to call to testify. And that was something that the immigration judge did put on Mr. Bush during the transcript of the proceedings. These are the parents who were being cared for by the brother, who had sufficient funds here, that they were going to be okay, and not ---- it would not be a hardship if your clients were returned to Mexico. But there was testimony that the two brothers were sharing time with the parents, and that was something that the judge completely just discredited that because the judge basically said, I'm not going to accept any evidence or any testimony regarding any medical issues if they're not here to testify. And there was a part in that transcript where the male Petitioner tried to testify regarding his parents' medical condition. That was completely excluded because they were not there and they were not present to testify. So that's one example of evidence that might have given them more of an opportunity to establish the exceptional and extreme unusual threshold and might have affected the outcome, which I think is really what the prejudice analysis requires. It isn't so much that my clients have to establish that they would have prevailed. It's just simply that this incompetence might have affected the outcome. And I think that if you look at the transcript, it's clear that you didn't have two material witnesses that could have testified that was presented. There was no medical evidence that was presented in regards to the two legal resident parents. And on top of that, I mean, on numerous occasions, the immigration judge tells Mr. Bush, quit stalling. You're asking nonsense questions in an effort to stall an outcome. Is the parents the principal argument here for hardship? I manage, Your Honor. I'm sorry? Is care for the parents the principal claim for hardship? I don't believe so. At least at this point, we would obviously have the children. I know that quite a few years have already passed. The children are much older. But at the time, obviously. But even then, what were the special needs of the children? Well, they were all minor children. But I think that what they were focusing more on. Right. We see that situation all the time. And the BIA turns these down all the time and we affirm that all the time. And we don't review that. Usually it requires some kind of a special medical condition, some kind of special circumstances that cannot be treated in the claimant's home country. As I recall, they were asked whether the children had any special conditions, special medical conditions. The answer was no. Were there any special educational needs? The answer was no. There are three U.S. citizen children. Again, that's a very sad situation. But it's one that we see all the time. So where's the prejudice? I think that the parents here would probably be the strongest evidence of prejudice. And, again, keeping in mind that the threshold is very minimal. It's just simply that it may have affected the outcome. There is no doubt that there may have been a chance that if you would have presented the testimony of the parents, that the parents would have testified that both brothers share custody of them, essentially, that they both take care of them. But what case says that shared custody of parents with medical needs meets the extraordinary hardship or extreme and unusual hardship standard? I don't believe there is one. But, see, that's the problem with this hardship standard that the BIA only has three published cases on it. I think the argument that we would offer, Your Honor, is it possible, is it a viable argument that if you would have included whatever time they spent with the parents, whatever responsibility they had for the parents, whatever medical issues the parents had, in conjunction with the three children, perhaps those five together may have established the requisite hardship. Is it completely possible that the BIA might have denied it anyway? Absolutely. But that's not the point. The point that Morales-Apollinar makes, that Ray v. Gonzalez makes, that Mejia-Hernandez makes, is simply that you deprive them of a meaningful opportunity to present their case. Counsel, on the Morales-Apollinar case, and I agree, I think that's one of your strongest cases here, but I was confused by your 28J letter. Yes, Your Honor. You cite that at 498 F. 3rd 973, but I couldn't find that case at that site. But I did find Morales-Apollinar at 514 F. 3rd 893. Not where you cited, 498 F. 3rd, but at 514 F. 3rd at 893. Same date. I mean, January 2008, 9th Circuit. Am I missing something? Did I misunderstand something? Not at all, Your Honor. I will be honest with the Court. I had some problem accessing Westlaw on the day that I prepared that, so I had to rely on Google, and it looks like Google let me down. So I apologize for that, but I'll make sure to submit a new 28J letter with the correct citation. But thank you for pointing that out, Your Honor. Your Honors, another argument that I want to make is that with regards to the presumption of prejudice and depriving them of the appeal, one thing that I noticed that the BIA doesn't mention is that if you look at the record, the brief was filed one day late in this case. And the BIA seems to just dismiss that. The BIA says, well, we affirmed it without opinion. We affirmed it on the merits. But if you look at the record, the brief was due August 24th. It wasn't received until the 25th. And I provided a citation to the Zatino case where you talk about whether or not in what circumstances the BIA may accept a late-filed brief. In the record, there's no evidence. There's no statement. There's nothing from the BIA that conclusively establishes that they even considered the brief. They say that they received it, but there's nothing there that says, well, we received it and we considered it. Well, of course, there's a presumption that the BIA considered all of the documents that were submitted to it. So do you have any evidence in the record to rebut that presumption? I think the evidence we would have would be the Zatino case. In the Zatino case, they made reference to a regulation, 1003.3c1. And in that regulation, it specifies that whenever the BIA decides to accept an untimely brief, it has to do so clearly in the decision. It will say, I've agreed to take this case. We will take it on our own discretion. In the 2004 decision, they never make reference. They just affirmed without opinion. So you're really at a loss here because you can try to presume that, but there's no evidence that the BIA even considered the brief. The only evidence we have is that it was filed one day late. And I'll go ahead and I'll reserve the rest of my time for rebuttal, Your Honor. Thank you. Thank you, counsel. We'll hear from the government. Good morning, Your Honors. May it please the Court. My name is Dara Smith and I represent the Attorney General. In this case, the Board acted within its discretion in denying the motion to reopen because Petitioners cannot bring an ineffective assistance claim against a notario who caused them to be placed in removal proceedings, and that hasn't been discussed yet today. But the case law in this circuit is clear that actions that took place causing removal proceedings are not do not cause unfairness in the removal proceedings themselves. Second, Petitioners have not shown that they were prejudiced by the actions of their former counsel, either before the immigration court or on direct appeal. Along those lines, how does your case, how does this case differ from Morales, Apollonar, where the Ninth Circuit said that Morales need not show, need only show plausible grounds for relief, then identified that there were some young daughters' medical problems and concluded that basically all of those facts might have been more favorably developed by a competent lawyer who was thoroughly familiar with the details of her case? Applying that here, wouldn't it be the case that the situation with the parents and also the brothers' sharing time might have been more favorably developed by a competent lawyer who is more thoroughly familiar with the details of the case as this counsel obviously was not? Respectfully, Your Honor, there are a couple of key differences between that case and this one. First of all, it's not evident that the Petitioner was deprived of the appellate process, and so there's a presumption of prejudice which sort of reduces the burden to showing that there were plausible grounds for relief when the Petitioner was entirely deprived of the appellate process, and that's in cases like Ray and Rojas. I was going to the latter point. Certainly. To show plausible grounds for relief, you would have to show that there was some evidence that would have been presented, and opposing counsel did indicate that the parents didn't testify, but the immigration judge said specifically that the parents' hardship wasn't relevant because the brother was taking care of them. It wasn't because the parents weren't testifying. It was because the brother was helping to support them, and the immigration judge simply wasn't interested in hearing any testimony about what their problems were. So although the parents' testimony could have been presented, there's no indication that the immigration judge could possibly have found that to be relevant to this case. Well, if the parents' needs were sufficiently great and if it does turn out that both brothers were caring for the parents, isn't that at least sufficient to give us plausible grounds? Although it's possible that they could have presented that evidence, the immigration judge treated the situation as if all of this evidence that we're discussing, all of these possibilities were still present. There was no evidence that wasn't presented that would have caused the immigration judge to see the situation differently. I mean, the Petitioner did testify that he was helping to support the parents. That evidence was before the immigration judge, and the immigration judge said no. I thought he rejected it because, no, you're not. It's the brother that's doing it. And that was not fully developed. He did reject it for that reason, Your Honor, but no testimony would have changed that opinion. I mean, it was clear from the financial records that the parents had quite a few assets, and he did, the Petitioner did testify that his brother was supporting  them, and although he stated, and I'm supporting them as well, and that's the only testimony that could have affected the immigration judge's decision. So in this case, there was really nothing that could have been presented that would have changed the immigration judge's mind, and that's clear from the transcript when the immigration judge rejects the Petitioner's testimony itself. In addition, as the Court has pointed out, there's no particular hardship that's ever been alleged that the children would have suffered, so there's no indication that a lack of preparation eliminated the possibility for that evidence to be presented. With regard to the appeal, there was an appeal brief filed, and I'd just like to note that when the motion to reopen was filed before the Board, the instant motion to reopen, the Petitioner never said, well, the appeal was filed late, and so it appears that the Board failed to consider it. And that's a very different argument from saying there was no appeal brief ever filed. And so that argument wasn't exhausted before the Board. But in any event, the Board never indicated in its 2004 decision that it didn't consider the appeal. And although the Board does have the discretion to accept an untimely brief or to reject it, it was the Petitioner's burden to show that the Board didn't consider the brief, didn't accept that one-day late filing, and the Board never indicated that that was the case. This is also very different from cases in which the Board summarily dismisses an appeal because a brief was never filed. And there's no indication in this case that they did so for failure to prosecute or failure to specifically identify the issues on appeal. And generally in the cases where this Court has considered that there's a presumption of prejudice because the Petitioner didn't have an opportunity to appeal at all, it's because the Board said you didn't file an appeal, so we're summarily dismissing your case for lack of specificity or failure to prosecute. That's not the case here. So that presumption would not apply. Additionally, with respect to the final attorney, Mr. Crowder, the Petitioners have not shown that they were entitled to equitable tolling so as to be able to file that motion late because they didn't contact Mr. Crowder for a year and a half after initially meeting with him to see if he had filed the motion to reopen at all. They weren't prevented from contacting him. He didn't assure them at any time during that year and a half that he had filed the motion. They simply didn't contact him for a year and a half. That's not due diligence. That's not pursuing their rights. In addition, I just want to point out that, in fact, in the most recent decision, the Board did address the claim that they wanted to raise in that motion to reopen that Mr. Crowder would have brought. So the Board has now addressed those concerns about ineffective assistance of counsel that we're talking about today. So in the event that this Court does determine that equitable tolling would apply, there is still no prejudice and no need to remand to the Board for reconsideration based on that alleged ineffective assistance because the Board has now considered the claim that was the basis that that motion was to be filed on. Is there no further questions? It appears not. Then the government respectfully requests that the Court deny the petition for review. Thank you. Thank you. Rebuttal. Your Honors, I'd like to touch on the issue regarding Mr. Crowder. I think that that is also something that is relevant, obviously, because the BIA denied it as an alternative basis, used it as an alternative basis to deny the motion to reopen. I think it's important to take into account cases like the Mejia case that we provided a citation for. In that case, the alien relied on a representation from a non-attorney for over seven years, from 1998 until 2005, that a motion had been pending. In this case, my clients did not definitively learn that there was a fraud that had occurred until they received the notice that their bond had been breached. Within three months, within two months, from November of 2005 when they found out to January of 2006 when they met with Mr. Crowder, they went and they went ahead and they hired him. As soon as February of 2006, they paid him money. They acted diligently. They found a different attorney the moment that they knew that something was wrong. They then relied on Mr. Crowder's representations that he had filed the motion. It's understandable that my clients wouldn't believe that they would be burned twice by two different attorneys. Is the issue about the two brothers sharing the time and taking care of the parents in the record, in the appellate record? It is, Your Honor. It's something that is part of the testimony. But as you can tell through the transcript, it seemed to me that the judge really relied more on the fact that, well, since the brother was the one that petitioned the parents, he's legally obligated to take care of them. And I think she even uses the word morally, which is another issue that could have been raised properly at the board. I am not aware of any statute that says that simply by virtue of petitioning your parents that that sibling is the only person that is responsible to take them to the doctor, to care for them, to have them live with them. The only contract you make with the government with an affidavit of support is that you'll reimburse the government if they ever get any type of government funds. So if there aren't any more questions, for those reasons, we would respectfully request the court grant the petition in our favor. Thank you. Thank you, counsel. Thank you to both counsel. The case just argued and submitted for decision by the court.
judges: Simon, Rawlinson, Bybee